UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHANNEL E. ALLEN,

                Plaintiff,

v.

MICHIGAN FIRST CREDIT UNION,

                Defendant.

_____/

Civil Action No. 23-10248

Nancy G. Edmunds
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 63)

In this case, *pro se* plaintiff Channel Allen ("Allen") alleges that defendant Michigan First Credit Union ("MFCU") violated her rights under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), by "changing the terms of [her] mortgage loan because of [her] race to make it impossible for [her] to purchase the home [she] desired." (ECF No. 54, PageID.583-89). The case has been referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 5).

After the parties completed an extensive period of discovery, MFCU moved for summary judgment on Allen's FHA and ECOA claims against it. (ECF No. 63). The motion was fully briefed. (ECF Nos. 67, 69, 77, 78).[1] For the reasons set forth below, MFCU's motion should be GRANTED.

_____

[1] The Court permitted Allen to file a supplemental brief, and for MFCU to file a supplemental response. (ECF No. 72).

## I.     Factual Background

On December 1, 2020, Allen sought to obtain a mortgage loan from MFCU and contacted one of its loan officers, Zarine M. Torrey ("Torrey"), for assistance.  (ECF No. 15-2, PageID.54).  Specifically, Allen sought to apply for an FHA mortgage loan with down payment assistance under the Michigan State Housing Development Authority ("MSHDA").[2]

Relevant here, the underwriting guidelines for an FHA loan at the time of Allen's application provided that in assessing a mortgagee's monthly student loan payment obligations, the payment must be calculated as:

- either the greater of:
  - 1 percent of the outstanding balance on the loan; or
  - the monthly payment reported on the Borrower's credit report; or
- the actual documented payment, provided the payment will fully amortize the loan over its term.

(ECF No. 63-1, PageID.683-84).[3]

As for MSHDA down payment assistance, the guidelines provide that the maximum debt-to-income ratio ("DTI") for a borrower cannot exceed 45% to qualify.  (ECF No. 63-1, PageID.741 (MSHDA MI Home Loan Operating Manual, Section 11.7, providing that

---

[2] The MSHDA "MI Home Loan Operating Manual" provides that "[t]he basic objective of MSDHA's Homeownership Loan Program is to provide safe, affordable, and successful homeownership opportunities to eligible, low and moderate-income residents.  MSHDA partners with approved Lenders throughout the State providing down payment assistance products, at reasonable rates, to their borrowers so they can purchase their primary residences."  (ECF No. 63-1, PageID.722).

[3] *See also* Mortgagee Letter 2021-13, https://www.hud.gov/sites/dfiles/OCHCO/documents/2021-13hsgml.pdf (last visited July 10, 2023) (providing FHA underwriting guidelines for student loan payment calculation of monthly obligation for applications prior to August 16, 2021, and amended guidelines for applications on or after August 16, 2021).

"At no time will MSHDA approve a loan with debt to income ratios exceeding 45.000%," and "Ratios must be at or below our DTI cap of 45.000% before it is submitted to MSHDA").

On December 29, 2020, Torrey sent Allen a pre-approval letter for a "MSHDA FHA Mortgage" loan on a condo for a purchase price up to $172,000.  (ECF No. 15-2, PageID.57).  On January 4, 2021, Allen informed Torrey about a house she wanted to purchase in Southfield, Michigan, and that same day, Torrey sent Allen another pre-approval letter for a "MSDHA FHA Mortgage (SFR)" loan for a purchase price up to $200,000.  (ECF No. 15-3, PageID.60, 62).  Although Allen obtained pre-approval, it appears that she was ultimately unsuccessful in her bid for the condo in Southfield.  (ECF No. 67-3, PageID.868).

Shortly thereafter, on January 12, 2021, Allen contacted Torrey concerning the purchase of a condo located at 7222 Huntcliff, West Bloomfield, Michigan (the "West Bloomfield Property").  (*Id.*; ECF No. 63-1, PageID.676).  On January 14, 2021, Torrey informed Allen that when taking into account obligations associated with the purchase, including the $233/month she would owe for property taxes for the West Bloomfield Property, Allen's DTI amounted to 46.466%[4], so she would not qualify for a MSHDA loan, which, as noted above, requires a DTI of 45% or less.  (ECF No. 67-2, PageID.842).

---

[4] It appears that this DTI percentage was calculated using Allen's *reported* monthly student loan payment of $143 (ECF No. 63-1, PageID.659), whereas, as discussed below, the proper amount to be used in the DTI calculation was $1,434.37/month.  *See infra* at 6, 16.  Regardless, even using the monthly payment reported by Allen, the DTI percentage was still too high for her to qualify.

The next day, on January 15, 2021, Allen asked Torrey about the possibility of applying for a "non MSHDA loan with this property for 170,000," and the down payment that would be required for that loan.  (ECF No. 67-2, PageID.844).  Torrey explained that if Allen "qualif[ied] for a $170K FHA purchase, not MSHDA, FHA [] [requires a] 3.5% down [payment] which is $5950.00," but that Torrey would have to rerun the approval because Allen's "DTI will be over 45%" and she would "have to see if FHA will take a higher DTI..." (*Id.*, PageID.848).  On January 16, 2021, Torrey e-mailed Allen, asking, "Do you want to do MSHDA or MSHDA FHA?  [With] MSHDA you pay around 1% of the purchase price and MSHDA covers the rest[.]  [With] FHA you pay 3.5% of the purchase price which is the down payment plus closing costs and prepaids.  I saw the agreement come over this morning.  I will review." (*Id.*, PageID.846).

On January 18, 2021, Torrey e-mailed Allen, stating that Allen should have received an e-mail "to econsent," and requested that she send over recent paystubs, bank statements, her W2, and a verification of employment form.  (ECF No. 67-2, PageID.850).  Internal MFCU Conversation Log Entries reflect that, later that same day at 4:02 PM, Allen and Torrey discussed applying for a 30-year "MSHDA FHA" loan with a fixed interest rate of 3.875%, and calculating her monthly student loan payments as 1% of the total balance of her student loans.  (ECF No. 63-1, PageID.676) ("Fannie MSHDA FHA"; "30 year fixed with escrow 3.875%"; "for student loan payment, Fannie, using 1% of balance for payment").  Based on their discussion, Torrey provided Allen with a residential loan application for signature.  (*Id.*, PageID.658-62).

4

On January 21, 2021, Allen signed and submitted the loan application for a 30-year FHA loan in the amount of $168,884.00 at a fixed interest rate of 3.875%, with the down payment being funded by her "Checking/Savings" and the "MSHDA."  (ECF No. 63-1, PageID.658; *id.*, PageID.676 ("cash to close from checking account and MSHDA $7500"). Relevant here, the loan application listed Allen's monthly student loan payment to the U.S. Department of Education as $143.00, with a total unpaid balance of $143,437.00.  (*Id.*, PageID.659).  Allen's monthly income was listed as $3,650.  (*Id.*).  On that same date, Allen also signed (1) a loan estimate from MFCU for the West Bloomfield Property for a 30-year FHA loan in the amount of $168,884 (ECF No. 63-1, PageID.664-66); and (2) an acknowledgement of her intent to proceed with the purchase of the West Bloomfield Property (*id.*, PageID.668).

The next day, on January 22, 2024, Allen's application was "submitted to processing," and MFCU mortgage loan processor Will Atkins ("Atkins") was assigned to review her application.  (ECF No. 63-1, PageID.679; ECF No. 28, PageID.157 (e-mail from Torrey stating Allen's file was submitted to processing, and "Loan is FHA/condo."). As a mortgage loan processor, Atkins' role included validating applications "for data accuracy against the documents that were in the mortgage file," and "mak[ing] sure that they met the minimum requirements for documentation" and "that the information on those documents was accurately inputted into the mortgage application."  (ECF No. 67-5, PageID.885).  Standard documentation he would review "include[d] pay stubs, W2s, a credit report, [and] asset statements."  (*Id.*, PageID.887).

On January 26, 2021, upon "Initial Review," Atkins determined that Allen's application could not be submitted to underwriting because the student loan payment amount listed on her application was incorrect; specifically, FHA guidelines required student loan payments to be 1% of the total student loan amount of $143,437.00, which calculated to a payment of $1,434.37/month, and not $143.00/month as listed on Allen's application.  (ECF No. 63-1, PageID.679) ("Updated SL payments to be 1% per FHA guideline, DTI [Debt-to-income ratio] is now 83%.  Advised LO [loan officer] we are unable to proceed with current loan program.").  Based on this determination, Atkins instructed Torrey to "research and follow up with how they may proceed."  (*Id.*).  Torrey attempted to identify other loan programs that could be available to Allen, and in that process updated Allen's information in the system to explore the possibility of a portfolio loan[5] with conventional financing.  (ECF No. 67-3, PageID.870).

On January 30, 2021, Allen received an e-mail from MFCU employee Cyndi VanZandt with new loan documentation, including a new loan estimate.  (ECF No. 28, PageID.163).  The loan estimate was for a 30-year conventional portfolio loan in the amount of $154,800 with a 7-year adjustable rate mortgage interest rate of 6%, with an estimated $26,950 in cash for closing.  (ECF No. 28, PageID.159).

That same day, Allen forwarded VanZandt's e-mail to Torrey at 12:26 PM, stating, "I reviewed the documents that were sent by Ms. VanZandt.  The loan type is wrong, it

---

[5] MFCU explains in its motion that a "portfolio loan" meant that the loan "would stay in [MFCU's] portfolio of loans instead of being sold in the secondary market.  []  Doing so, however, would cause the interest rate to increase and require a larger down payment."  (ECF No. 63, PageID.641).

states conventional and the interest rate is 6%, but I was previously quoted 3.8%.  Please advise." (*Id.*).  Allen later e-mailed Torrey again at 5:33 PM, stating, "I receive[d] your voicemail regarding not [] being able to go with MSHDA, what happened??  Does that mean I have to pay the closing costs by myself??  Is there another program to assist?  Can the closing costs be rolled into my monthly payments.  Please advise." (ECF No. 28, PageID.166).  Allen then sent another e-mail at 9:07 PM, stating "I would like a FHA with MSHDA." (*Id.*).  The next day, on January 31, 2021, Allen e-mailed Torrey, stating, "I need a FHA loan, 30year fixed rate.  I also would like [] for the closing costs to be included in my loan.  I would also like to use MSHDA." (*Id.*, PageID.769).

On February 1, 2021, Atkins submitted Allen's loan application for denial because it could not be "approved as originally submitted" as a "FHA MSDHA" loan based on Allen's DTI of 83%.  (ECF No. 63-1, PageID.681) ("Submitted for denial.  Loan cannot be approved as originally submitted.  Application taken as FHA MSHDA but DTI is 83%").

On February 3, 2021, MFCU's Mortgage Underwriting Manager, Deborah Howard ("Howard"), reviewed Allen's submitted loan application and determined that Allen "did not qualify for the FHA loan with MSHDA down payment assistance" because "[t]he underwriting requirements of the FHA at that time required [] Allen's monthly student loan payment obligation to be considered as one percent of the total balance of her student loans for underwriting purposes," and "[a]s a result, [] Allen's debt-to-income ratio was 83% for underwriting purposes."  (ECF No. 63-1, PageID.772, ¶¶ 4-7 (Howard's affidavit)).  Because Allen's DTI was "more than the maximum allowed for an FHA loan pursuant to

FHA guidelines," and "also exceeded the maximum allowed by MSHDA for the down payment assistance [] Allen was seeking," she "did not meet the underwriting requirements for MSHDA down payment assistance" and "had insufficient funds to close the FHA loan." (*Id.*, ¶¶ 8-10).

As a result, on February 3, 2021, Howard caused MFCU to issue a Statement of Credit Denial, Termination, or Change denying Allen's mortgage loan application (the "Denial Statement"). (*Id.*, PageID.776). As its stated reasons for denying the application, the Denial Statement listed "Excessive obligations; insufficient income for total obligations"; "Income insufficient for amount of credit requested"; and "Insufficient funds to close." (*Id.*).

Notably, the Denial Statement listed terms for a 30-year conventional loan for the amount of $154,800 with an interest rate as 6%. (*Id.*). However, Howard explains in her sworn affidavit that the Denial Statement "incorrectly stated the loan amount and the interest rate for [] Allen's loan application because that information was automatically populated from the Loan Origination System ("LOS") utilized by [MFCU]," and that when "Torrey explored the possibility of a portfolio loan for [] Allen, the portfolio loan information was updated in the LOS and was not changed back to the FHA loan when the Statement of Credit Denial, Termination, or Change was populated." (ECF No. 63-1, PageID.773, ¶¶ 12-13). Howard avers that the Denial Statement she issued "pertains to [] Allen's application for an FHA loan with MSHDA down payment assistance." (*Id.*, PageID.774, ¶ 14); *see also* (ECF No. 63-1, PageID.681) (Conversation Log entry from Howard noting Allen's loan application "is being declined for excessive debt ratio and

insufficient funds to close – borrower wishes to only get a fha/mshda loan due to not having her own funds to close").  That same day, MFCU manager Brian McCown reviewed the application and "concur[red] with the decline due to Excessive Obligations." (*Id.*) ("denial mgmt review").

Ultimately, Allen did not obtain a loan from MFCU.  However, on March 11, 2021, Allen obtained from Flagstar Bank a 30-year conventional mortgage loan in the amount of $172,000 at a fixed interest rate of 3.25% with $2,474.68 cash to close, for the West Bloomfield Property.  (ECF No. 28, PageID.168).

MFCU now moves for summary judgment in its favor on Allen's FHA and ECOA claims against it.  (ECF No. 63).  Having carefully reviewed the parties' arguments and the record evidence, the Court agrees that summary judgment in MFCU's favor is appropriate.

## II.   Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

## III.   Analysis

### A.  MFCU is Entitled to Summary Judgment on Allen's FHA Claim

Allen claims that MFCU altered her loan terms to make them unaffordable, and that it did so based on her race. (ECF No. 54, PageID.586). She contends that MFCU "failed to adhere to the guidelines outlined by the [FHA] when calculating [her] student loans"

10

when it calculated 1% of the outstanding student loan balance instead of accepting her actual documented payment amount.  (*Id.*, PageID.587).

Under Section 3605[6] of the FHA, "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a).  Where the plaintiff has no direct evidence of race-based discrimination,[7] "[t]he burden-shifting standard the Supreme Court adopted in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 [] (1973), applies to claims under this section."  *Adams v. U.S. Bank*, No. 10-10567, 2010 WL 2670702, at *2 (E.D. Mich. July 1, 2010).  The first step in the analysis is determining whether Allen has shown a *prima facie* case of discrimination, which requires her to show that: "(1) [she was] a member of a protected class; (2) [she] attempted to engage in a 'real estate-related

---

[6] In her complaint, Allen references Section 3604 of the FHA, but that section applies to "discrimination in the sale or rental of housing," whereas Section 3605 applies to "discrimination in residential real estate-related transactions," the latter clearly being the section Allen contends MFCU violated.

[7] Here, Allen has not presented direct evidence of racial discrimination; while she *alleges* that her loan terms were changed after her race became known to MFCU's "processing department" and after she started looking into a "predominantly white area" in West Bloomfield, she has not presented *evidence* that establishes the factual premises of that allegation.  Indeed, Allen testified that it was her *belief* that Torrey did not use the actual documented payment number for her student loans because of her race, as Torrey's attitude and responsiveness changed once she started looking into in West Bloomfield.  (ECF No. 63-1, PageID.693-94) ("I believe it's what she did . . . That's my primary basis right there.").  Allen also testified that she did not know of any reason why Atkins would have incorrectly applied the FHA requirements based on her race (*id.*, PageID.695), and that she could not "provide a factual answer to any statement made that [] Howard's Affidavit is false" other than that "I know that don't sound right, I just know" (*id.*, PageID.699).

transaction' with [the defendant], and met all relevant qualifications for doing so; (3) [the defendant] refused to transact business with [her] despite [her] qualifications; and (4) the defendant [ ] continued to engage in that type of transaction with other parties with similar qualifications." *Ray v. U.S. Bank Nat. Ass'n*, 627 F. App'x 452, 457 (6th Cir. 2015) (citations omitted).

In its motion, MFCU argues that Allen's FHA claim fails because "she was not qualified for the loan she sought and there is no other person she can identify with similar qualifications that was approved for the loan she sought," *i.e.*, that she cannot meet the second and fourth elements of a *prima facie* case of discrimination. (ECF No. 63, PageID.652). The Court concurs that Allen failed to raise a material question of fact on those elements.

As to the second element, it is undisputed that Allen attempted to engage in a "real estate-related transaction" with MFCU when she applied for a MSHDA FHA mortgage loan. The issue here is whether Allen presented sufficient evidence to raise a material factual question that she "met all the relevant qualifications" for obtaining such a loan. Even viewing the evidence in the light most favorable to Allen, there is no material factual dispute that Allen did not qualify for the specific MSHDA FHA loan for which she applied.

First, the evidence is undisputed that Allen applied for an MSHDA FHA loan, and that it was her MSHDA FHA loan application that MFCU denied. Specifically, the record evidence reflects that the loan application Torrey sent to Allen was for an "FHA" loan with down payment being sourced by "MSHDA." (ECF No. 63-1, PageID.658; *id.*, PageID.676 ("cash to close from checking account and MSHDA $7500"). Once Allen signed that

application, it was "submitted to processing" for review, where mortgage loan processor Atkins determined that the student loan monthly payment amount on the application needed to be updated "per FHA guideline," and ultimately submitted that application "for denial" because "[a]pplication taken as FHA MSHDA" but "DTI is 83%" so the loan "cannot be approved as originally submitted."  (*Id.*, PageID.679, 681).  Finally, once submitted to MFCU's internal underwriting department, manager Howard determined that Allen "did not qualify for the FHA loan with MSHDA down payment assistance" because she "did not meet the underwriting requirements for MSHDA down payment assistance," and "had insufficient funds to close the FHA loan."  (*Id.*, PageID.772).

Allen contends that she was not actually considered for an MSHDA FHA because the Denial Statement she received listed terms for a conventional loan for $154,800 with an interest rate of 6%, and $26,000 cash to close.  (*See* ECF No. 63-1, PageID.700 ("I was no longer being considered for the FHA, the FHA with MSHDA.  I was in system [sic] being considered for a conventional loan, six percent and the $26,000 down.  That's what I was being considered for.  So once the . . . new loan estimate is sent out, that's a done deal, right?").  Allen is correct that the Denial Statement listed terms for a different conventional loan, but MFCU explained via Howard's sworn affidavit that the Denial Statement "incorrectly" stated the loan amount and interest rate because it had automatically populated information from when Torrey was exploring alternative portfolio loans for which Allen might qualify, and that this information "was not changed back to the FHA loan when the [Denial Statement] was populated."  (ECF No. 63-1, PageID.776).  Importantly, Howard's affidavit is corroborated by the other evidence detailed above *supra*

at 12-13, which consistently confirm via internal MFCU conversation log entries that each stage of the loan application process from submission to processing to denial assessed only whether Allen's qualifications met the requirements of the FHA and MSHDA.  Moreover, Allen's contention that "[o]n January 30, 2021, the terms of [her] loan underwent modification, transitioning from an MSHDA FHA to a Portfolio Conventional Loan" is her own subjective characterization of the sequence of events, and is clearly belied by evidence that *two days later, on February 1, 2021*, Atkins submitted Allen's "[a]pplication *taken as FHA MSHDA*" for denial because the "[l]oan cannot be approved *as originally submitted*." (ECF No. 63-1, PageID.681) (emphasis added).  It was then on February 3, 2021, that Howard approved denial of Allen's application because she "did not qualify for *the FHA loan with MSHDA down payment assistance*".  (*Id.*, PageID.772) (emphasis added).

Second, Allen's argument that MFCU should have calculated her monthly student loan obligations using the "actual documented payment" number of $143/month under her income-based repayment plan lacks merit, as the FHA guidelines make clear that actual documented payments can only be used "*provided the payment will fully amortize the loan over its term*." (ECF No. 63-1, PageID.683-84) (emphasis added).  In other words, Allen's actual documented monthly payments of $143 needed to result in her total student loan balance being *fully paid off* by the end of its term.  (ECF No. 63-1, PageID.683-84).  Allen testified that the term of her student loans was "25 years" (ECF No. 63-1, PageID.690), and the evidence reflects that her total outstanding balance on her student loan was approximately $143,437 at the time of her mortgage application (ECF No. 63-1, PageID.659).  Basic calculations make clear that even at a 0% interest rate, with 100% of

all monthly payments going to reduce the loan's principal balance, it would take about 1,003 monthly payments of $143 – or 83 years – to pay off the principal of the $143,437. Thus, Allen's actual documented monthly payments of $143 would clearly not "fully amortize the loan over its term." Consequently, the FHA guidelines did not allow MFCU to use her actual documented payments as her monthly student loan obligations in assessing her DTI.[8]

Based on the foregoing analysis, there is no dispute that MFCU properly calculated Allen's monthly student loan payment obligations using 1% of the outstanding balance on her total student loans, in accordance with the underwriting guidelines for an FHA loan at the time of her loan application. (*See* ECF No. 63-1, PageID.683-84) ("either *the greater of* 1% of the outstanding balance on the loan; or the monthly payment reported on the Borrower's credit report.") (emphasis added).[9] MFCU's internal documents reflect that, when calculating her monthly student loan obligations as 1% of the total balance of her student loans of $143,437 (*i.e.*, approximately $1,434.37 per month), her DTI increased to 83% and significantly exceeded the maximum cap of 45% to qualify for MSHDA down payment assistance. (ECF No. 63-1, PageID.679 ("Updated SL payments to be 1% per

---

[8] Allen's contention that "[s]ince [she] was working for the government at a certain period of time, [] [her student loan] would have been like forgiven after 25 years" (ECF No. 63-1, PageID.690), is misguided. A government repayment program to forgive student loans after a certain period of time is separate and distinct from underwriting calculations as to whether a certain monthly payment amount will fully amortize over the term of the loan.

[9] Because Allen's credit report reflects $0 monthly student loan payments (ECF No. 63-1, PageID.716), the FHA guidelines required MFCU to use the "greater" number of 1% of the outstanding balance on the student loan in its calculations.

FHA guideline, DTI is now 83%); *id.*, PageID.741 ("At no time will MSHDA approve a loan with debt to income ratios exceeding 45.000%"); *id.*, PageID.772 (Howard's affidavit)).  Not only did Allen present no evidence showing that she qualified for an MSHDA FHA loan, but she acknowledged in her deposition that she did not actually know if she qualified.  (ECF No. 63-1, PageID.696) ("Q: Okay.  So you don't know if you qualified for an FHA loan with MSHDA down payment assistance . . . ?  A.  Right.  I don't know if she would have explained to me -- I remember her explaining to me about like oh, the DTI too much.  But now I'm like what was considered, was it my actual student loan payment that was included in the DTI or wasn't.  So I don't know.").[10]

In sum, the record evidence makes clear that Allen did not qualify for an FHA loan with MSHDA down payment assistance because her DTI significantly exceeded the

---

[10] To the extent Allen asserts that she qualified for an FHA loan *without* MSHDA down payment assistance, she lacks a factual basis for such assertion.  For instance, when asked at her deposition if she qualified for an FHA loan without MSHDA down payment assistance, Allen merely testified that she "[h]onestly believe[d] so," and "[t]hat's just my assumption . . ." (ECF No. 63-1, PageID.697).  Such speculative assertions, however, are insufficient to raise a material question of fact.  *Logan v. MGM Grand Detroit Casino*, Case No. 4:16-cv-10585, 2020 WL 5900969, at *8 (E.D. Mich. Aug. 24, 2020).  Moreover, the record *evidence* shows that Allen did not qualify for such a loan.  Underwriting manager Howard averred that, in reviewing Allen's application, her DTI was "more than the maximum allowed for an FHA loan pursuant to FHA guidelines," and Allen "also had insufficient funds to close the FHA loan" without MSHDA down payment assistance.  (ECF No. 63-1, PageID.772-73).  Again, Allen presented no evidence that refutes Howard's averments.  Finally, Allen testified that, even at Flagstar Bank where she ultimately obtained a conventional loan for the West Bloomfield Property, she did not qualify for an FHA loan.  (ECF No. 63-1, PageID.704 ("when I submitted the application to Flagstar initially, I think went [sic] to FHA.  I don't think I did with MSHDA.  I'm just going to do flat out FHA.  Then I think she said something about like no, FHA don't work or something like that.  We switched to conventional.  I'm not sure what her reasoning was . . ."); *id.*, PageID.714) ("Q.  When you went to Flagstar, they told you you couldn't get FHA loan?  A.  Yes.  They said no.  I think they said no because we switched to conventional.  Had to.")).

maximum cap, and she had insufficient funds to close the FHA loan without MSHDA

assistance.  Because Allen failed to present evidence that raises a material factual question

as to whether she qualified for an MSHDA FHA loan, she fails the second prong of a *prima*

*facie* case of discrimination, and MFCU is thus entitled to summary judgment on her FHA

claim.[11]

### B.  MFCU is Entitled to Summary Judgment on Allen's ECOA Claims

Allen claims that MFCU violated her rights under the ECOA because MFCU

"changed the loan program, increased the interest rate, and raised the down payment

requirement for [Allen] after learning of [her] intention to buy a home in a predominantly

white neighborhood."  (ECF No. 54, PageID.586).  Allen also contends that MFCU

violated its obligation under the ECOA to provide her with a clear and specific explanation

for the adverse actions taken against her as it relates to the alteration of her loan terms to a

conventional loan, and to the denial of her loan application.  (*Id.*, PageID.586-88).

In its summary judgment motion, MFCU argues that, to the extent Allen seeks to

assert a discrimination claim under the ECOA, "the same analysis [for her FHA claim]

applies because Plaintiff is required to show the same elements as a claim under the Fair

Housing Act."  (ECF No. 63, PageID.650).  As to her claim that MFCU failed to provide

---

[11] Based on the reasoning above, the Court need not provide a detailed analysis of Allen's failure
to satisfy the fourth prong of a *prima facie* case for discrimination on her FHA claim.  However,
a review of the parties' briefs and the record evidence shows that Allen does not argue, much less
present evidence demonstrating, that MFCU "continued to engage in that type of transaction with
other parties with similar qualifications."  *Ray*, 627 F. App'x at 457.  Rather, she testified that she
does not know "anyone else that received an FHA loan with a debt-to-income ratio that exceeded
45 percent from Michigan First Credit Union."  (ECF No. 63-1, PageID.714).  Accordingly, Allen
fails the fourth prong of her *prima facie* case, and MFCU is entitled to summary judgment on this
basis, as well.

her with a proper notice of its application decision, it argues that her arguments lack merit because MFCU provided Allen with the Denial Statement notifying her that her FHA loan application was denied and the reasons for the denial, and Allen has no evidence that the Denial Statement did not relate to her FHA loan application.  (ECF No. 63, PageID.645). After reviewing the parties' briefs and the record evidence, the Court concurs that MFCU is entitled to summary judgment on Allen's ECOA claims.

The ECOA prohibits creditors from discrimination against any credit applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1).  As to Allen's ECOA claim based on discrimination, the Sixth Circuit has stated that "[t]he prima facie case necessary to establish a claim under the FHA or the ECOA using circumstantial evidence is the same." *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 778 (6th Cir. 2004) ("To establish a prima facie case of discrimination under the FHA or the ECOA, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a loan; (3) the loan application was rejected despite his or her qualifications; and (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff.").  For the reasons detailed above finding that Allen failed to meet the second and fourth prongs of a *prima facie* case for her FHA claim, *see supra at* 11-16, she likewise fails on the second and fourth prongs of a *prima facie* case for her ECOA claim based on discrimination. *Hood*, 95 F. App'x at 778.

As to Allen's claim that MFCU violated the ECOA's notice obligation, she fails to raise a material question of fact showing that MFCU did not adequately notify her of any

adverse actions on her application.  As part of its scheme to create accountability for

creditors' decisions, the ECOA imposes certain notice obligations on creditors when they

take "adverse action" against a credit applicant.  *Dorton v. Kmart Corp.*, 229 F. Supp. 3d

612, 616 (E.D. Mich. 2017).  An "adverse action" is defined as:

> . . . a denial or revocation of credit, a change in the terms of an existing
> credit arrangement, or a refusal to grant credit in substantially the
> amount or on substantially the terms requested.  Such term does not
> include a refusal to extend additional credit under an existing credit
> arrangement where the applicant is delinquent or otherwise in default,
> or where such additional credit would exceed a previously established
> credit limit.

15 U.S.C. § 1691(d)(6).  "Generally speaking, an adverse action notice must contain 'a

statement of reasons for such [adverse] action' that is 'specific.'"  *Id.* (quoting 15 U.S.C.

§§ 1691(d)(2), (3)).

Here, Allen claims that MFCU violated the ECOA by altering the terms of her loan

application to a conventional loan without providing notice.  Her claim lacks merit for

several reasons.  First, because Allen was merely in the process of applying for a loan and

never actually obtained one with MFCU, there could not be "a change in terms *of an

existing credit arrangement*" with MFCU, as contemplated by the statute.  15 U.S.C. §

1691(d)(6).[12]  Second, as detailed above, *supra at* 13-14, the loan estimate for a

conventional portfolio loan on January 30, 2021, did not alter the terms of her application

for an MSHDA FHA loan, which was subsequently processed, submitted to MFCU's

---

[12] A loan estimate is not an "existing credit arrangement" within the meaning of the statute.  The
second sentence of § 1691(d)(6) contemplates scenarios in which an applicant is "delinquent or
otherwise in default" on an existing credit arrangement.  However, an applicant cannot be
delinquent or default on a loan estimate or a loan application.

underwriting for review on February 1, 2021, and denied for failure to meet MSHDA and FHA requirements.

As to Allen's claim that MFCU failed to provide notice of the denial of her MSHDA FHA loan application, the Denial Statement provides a statement of specific reasons for the denial of her loan application, including that Allen had "excessive obligations," "insufficient income for total obligations," "income insufficient for amount of credit requested," and "insufficient funds to close." (ECF No. 63-1, PageID.776). And, to the extent the Denial Statement incorrectly listed the terms of a different loan, as previously explained, underwriting manager Howard clarified why it automatically populated the incorrect terms, and the record evidence consistently corroborates that the Denial Statement in fact "pertains to [] Allen's application for an FHA loan with MSHDA down payment assistance." (ECF No. 63-1, PageID.744).

Based on the reasons above, Allen fails to present a material question of fact that MFCU violated the ECOA, and MFCU is entitled to summary judgment on her ECOA claims.

## IV.  CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that MFCU's motion for summary judgment **(ECF No. 63)** be **GRANTED**.

Dated: July 15, 2024                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                          United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.


## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
